**AMERICAN METAL PRODUCTS, INC.,**
**Plaintiff-Appellant, Cross-Appellee,**

v.

**SHEET METAL WORKERS INTERNA-
TIONAL ASSOCIATION, LOCAL UN-
ION NO. 104, Defendant-Appellee,
Cross-Appellant.**

Nos. 85–1560, 85–1715 and 85–1775.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1985.

Decided July 24, 1986.

Dennis B. Cook, Ronald W. Brown, Thierman, Simpson & Cook, Sacramento, Cal., for plaintiff-appellant, cross-appellee.

Lynn C. Rossman, Neyhart, Anderson, Nussbaum, Reilly & Freitas, San Francisco, Cal., for defendant-appellee, cross-appellant.

Before DUNIWAY and TANG, Circuit Judges, and HUPP,* District Judge.

TANG, Circuit Judge:

American Metal Products (AMP) appeals from the district court judgment confirming an award of the National Joint Adjustment Board (NJAB) in favor of Sheet Metal Workers Local No. 104 (Union). The NJAB award directed AMP to sign the collective bargaining agreement then in effect between the Union and the Sheet Metal and Air Conditioning Contractors National Association (SMACNA). AMP claims it cannot be bound by the award because (1) it had no duty to engage in interest arbitration after the termination of the prior collective bargaining agreement; and (2) the award is a prehire agreement which is either violative of public policy or was validly repudiated. AMP further contends that since interest arbitration is a non-mandatory bargaining subject, the interest arbitration clause of the award is void and unenforceable because the NJAB included the clause without AMP's consent.

The Union cross-appeals from the district court's denial of the Union's motion for sanctions against AMP.

We affirm in part, vacate in part, and remand.

**FACTS**

AMP is a sheet metal contracting business. As a member of SMACNA, AMP was bound to a collective bargaining agreement with the Union, effective from July 1,

---

* Honorable Harry L. Hupp, United States District Judge for the Central District of California, sitting by designation.

1980 to June 30, 1983. In January 1982, AMP withdrew from SMACNA. From early 1983, AMP's sole employees were the owner and his two sons.

On March 23, 1983 AMP notified the Union that since AMP had no union employees and did not anticipate further hiring, AMP would terminate the collective bargaining agreement upon its expiration.

Also on March 23, 1983 the Union notified AMP that it desired to reopen the agreement and to negotiate for a new contract.[1] AMP initially expressed an interest in renegotiating a new contract but claimed later it had no duty to bargain. In the summer of 1983 the Union declared the negotiations deadlocked and submitted the matter to the NJAB. On January 25, 1984 AMP filed with the National Labor Relations Board (NLRB) an employer petition for an election to decertify the union.

On February 9, 1984, the NJAB issued a unanimous award. It directed AMP to "execute the same collective bargaining agreement and any available addenda now in effect...." Shortly thereafter, the Acting Regional Director of the NLRB dismissed the AMP petition for an election. The NLRB investigation disclosed that the only two persons employed in the unit were the sons of the major shareholders of a close corporation and the unit therefore did not contain persons eligible to vote in a Board-conducted election.

On May 18, 1984 AMP filed in district court a complaint seeking declaratory relief and to vacate the NJAB award. The Union cross-filed a petition to enforce the award. On cross motions for summary judgment, the court entered an order confirming the award.

After the entry of the district court order, AMP filed a motion for summary judgment on its complaint for declaratory relief. AMP sought a determination that the collective bargaining agreement was a prehire agreement which AMP had validly repudiated. The Union contended, on the other hand, that this issue had been resolved by the court's order on the cross motions. The district court denied AMP's motion and sua sponte issued an order to show cause why Fed.R.Civ.P. 11 sanctions should not be imposed. On February 5, 1985 the district court ruled that AMP's motion had been brought improperly, but declined to sanction because it did not find bad faith or improper motive.

**STANDARD OF REVIEW**

A grant of summary judgment is reviewed *de novo*. *Operating Eng. Pen. Trust v. Beck Eng. & Surveying*, 746 F.2d 557, 561 (9th Cir.1984). This court determines whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.; Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir.1984).

Since the application of Fed.R.Civ.P. 11 is a matter of law, review by this court is *de novo*. *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83

---

1. The 1980–83 collective bargaining agreement included the following pertinent provisions:

   **Article X, Section 8.** In addition to the settlement of grievances arising out of interpretation of enforcement of this agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement shall be settled as hereinafter provided:

   **(a)** ... The dispute *shall* be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. *The unanimous decision of said Board shall be final and binding upon the parties*, reduced to writing, signed and mailed to the parties as soon as possible after decision has been reached.

   \*    \*    \*    \*    \*    \*

   **Article XII, Section 1.** This Agreement and Addendas attached hereto shall become effective on the 1st day of July, 1980, and remain in full force and effect until the 30th day of June, 1983, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. *In the event such notice of reopening is served, this Amendment shall continue in force and effect until conferences relating thereto have been terminated by either party, except as modified by Section 8 of Article X.* (Emphasis added.)

L.Ed.2d 46 (1984). The district court's findings of fact are reviewed under the clearly erroneous standard. *Id.*

## DISCUSSION

### POST–TERMINATION INTEREST ARBITRATION OBLIGATIONS

■ We find no ambiguity in the language of the interest arbitration clause of the collective bargaining agreement. [Interest arbitration is arbitration over new contract terms.] Article X, Section 8 of the agreement requires arbitration of all disputes which result from a deadlock in negotiations for a new agreement. Article XII, Section 1 maintains the agreement's full force and effect pending negotiations and actions by the NJAB. Read together, these articles represent the parties' agreement to negotiate a renewal agreement, and, if no agreement is forthcoming, to submit their dispute to the NJAB for interest arbitration. A unanimous NJAB ruling is final and binding upon the parties.

We recently ruled that timely notice of termination, or "termination" itself, does not automatically cancel an interest arbitration clause of a collective bargaining agreement. *Int'l Bhd. of Elec. Workers, Local No. 367 v. Graham County Elec. Coop.*, 783 F.2d 897, 899–900 (9th Cir.1986). *See also Hotel & Restaurant Employees Local 703 v. Williams*, 752 F.2d 1476, 1479 (9th Cir.1985) (interest arbitration clause survives the contract expiration date). Here, we find no indication in the language of the collective bargaining agreement that timely notice of termination of the contract or termination itself would cancel interest arbitration obligations.

■ AMP argues that its interest arbitration obligations are somehow linked to and canceled by its claim that it no longer has a statutory duty to bargain under the National Labor Relations Act. AMP's argument is misplaced.

■ AMP's duty to bargain arose from its collective bargaining agreement

and not from statutory obligations. The collective bargaining agreement does not require as a precondition to new contract negotiations an NLRB finding of an appropriate bargaining unit, a unit of employees unrelated to the owner at the time of renegotiation, or majority support of the Union.[2] That the children of the employer were the only remaining members of the unit is simply not relevant. An employer may contractually allow a union to represent employees who may not be permitted to vote in a NLRB election. *Arizona Elec. Power Coop.*, 250 NLRB 1132 (1980). If AMP believes the Union has committed an unfair labor practice, AMP is free to file a complaint with the NLRB. An unfair labor practice allegation, however, is not a valid defense to the enforcement of an arbitration award. *Hotel Employees Local 703 v. Williams*, 752 F.2d at 1478; *Sheet Metal Workers Int'l Assoc., Local 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 483–84 (9th Cir.1983).

### PREHIRE AGREEMENT

AMP argues that the 1980–83 collective bargaining agreement became, and *ab initio* that the NJAB imposed collective bargaining agreement was, a prehire agreement. AMP asserts that its interest arbitration obligations were canceled because it properly exercised its right to repudiate such a prehire agreement.

■ A prehire agreement is a contract between a union and an employer that is normally signed in advance of hiring employees and, therefore, in advance of any showing of union majority support. *See Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 266, 103 S.Ct. 1753, 1756–57, 75 L.Ed.2d 830 (1983); *John S. Griffith Construction Co. v. United Brotherhood of Carpenters & Joiners of Southern California Local 563*, 785 F.2d 706, 707 (9th Cir.1986). In a prehire agreement, the employer agrees to hire union members or union referrals for

---

2. **Article I, Section 1** of the collective bargaining agreement provides that:

This agreement covers the rates of pay, and conditions of employment of *all employees*.... (emphasis added.)

the purpose of working on an anticipated job.

Section 7 of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, confers upon employees the right to bargain collectively through representatives of their own choosing. *Id.* § 157. The Act confers this right to assure freedom of choice, majority rule in employee selection of representatives, and union accountability to the employees that it undertakes to represent. *See NLRB v. Iron Workers*, 434 U.S. 335, 345, 98 S.Ct. 651, 657–58, 54 L.Ed.2d 586 (1978) *(Higdon).* Thus, before a union signs a collective bargaining agreement with an employer, a union must establish majority status in the manner provided for under § 9 of the Act, 29 U.S.C. § 159.

Section 8(f), authorizing unions and employers engaged primarily in the building and construction industry to enter into "prehire agreements," *id.* § 158(f), is an exception to the § 7 rule that precludes a union and employer from "signing 'a collective bargaining agreement recognizing the union as the exclusive bargaining representative when in fact only a minority of the employees have authorized the union to represent their interests.'" *Jim McNeff, Inc. v. Todd*, 461 U.S. at 265, 103 S.Ct. at 1756 (quoting *Higdon*, 434 U.S. at 344–45, 98 S.Ct. at 657–58).

The justification for the exclusive availability of prehire agreements by the construction industry is twofold. First, prehire agreements allow employers to know their labor costs before making the estimate upon which their bids are based. *Higdon*, 434 U.S. at 348, 98 S.Ct. at 659. Second, employers must be able to have available a supply of skilled craftsmen ready for quick referral. *Id.* In short, "[r]epresentative elections in a large segment of the [construction] industry are not feasible to demonstrate majority status ... due to short periods of actual employment by specific employers." *Id.* at 349, 98 S.Ct. at 659, quoting S.Rep. No. 187, 86th Cong., 1st Sess. 55 (1959), U.S.Code Cong. & Admin.News 1959, pp. 2318, 2373.

▪ The § 8(f) exception, however, is of limited scope. For instance, a prehire agreement is voidable by either party until the union establishes that it represents a majority and an appropriate unit. *Jim McNeff, Inc. v. Todd*, 461 U.S. at 269, 103 S.Ct. at 1758. Further, a prehire agreement is a voluntary agreement; an employer may not be required to sign a prehire agreement. *Id.; Higdon*, 434 U.S. at 348, n. 10, 98 S.Ct. at 659, n. 10.

▪ We agree with the district court's finding that neither the 1980–83 collective bargaining agreement nor the NJAB award were prehire agreements. By definition, a prehire agreement can only exist where the union has not yet shown that it represents a majority of the appropriate bargaining unit. *See* 29 U.S.C. § 158(f); *Jim McNeff, Inc.*, 461 U.S. at 265–66, 103 S.Ct. at 1756–57. In this case, the 1980–83 collective bargaining agreement established the presumption that the Union at one time had majority status. *See NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 297 (9th Cir.1978). This presumption can be "rebutted if the employer shows, by clear, cogent, and convincing evidence, that the union was in the minority or that the employer had a good faith reasonable doubt of majority support at the time of the refusal [to bargain]." *Id.* AMP has not made this showing. It has not submitted any evidence regarding the Union's support among AMP employees or its good faith reasonable doubts about the same. Without supporting affidavits or other evidence, we cannot assume that the father-owner speaks for his employee sons in this matter. We must hold, therefore, that the Union remains the majority representative of the AMP employees. As a result, neither the collective bargaining agreement nor the NJAB award could be transformed into a prehire agreement.

## THE INTEREST ARBITRATION COMPONENT OF THE NJAB AWARD

▪ AMP contends that since interest arbitration is a non-mandatory subject for bargaining, an interest arbitration clause

cannot be included, over a party's objection, in a collective bargaining agreement resulting from interest arbitration. That is, interest arbitration cannot perpetuate itself. We agree.

We addressed the problem of the perpetuation of interest arbitration in *Hotel & Restaurant Employees v. Williams*, 752 F.2d 1476, 1479 (9th Cir.1985). There we stated that:

> ... arbitration can only be required for mandatory bargaining subjects, and an interest arbitration clause is a non-mandatory subject. In addition, a Union's insistence on the inclusion of a mandatory arbitration clause in a successor contract without the consent of the employer would constitute a refusal to bargain in good faith. (citation omitted.) An arbitration panel cannot make [the interest arbitration clause in the expired contract] self-perpetuating by including an interest arbitration clause in the new contract.

*Id.; Sheet Metal Workers v. Huggins Sheet Metal, Inc.*, 752 F.2d 1473, 1475 (9th Cir.1985). *Accord Sheet Metal Workers' v. Aldrich Air Conditioning*, 717 F.2d 456, 459 (8th Cir.1983). *See NLRB v. Sheet Metal Workers Int'l Assoc., Local Union No. 38*, 575 F.2d 394, 399 (2nd Cir.1978); *NLRB v. Columbus Printing Pressman & Assistants' Union No. 252*, 543 F.2d 1161, 1169–70 (5th Cir.1976).

The Union challenges this language on two grounds. First, it argues that the *Williams* language is dicta that is inconsistent with the Ninth Circuit's holding in *Sheet Metal Workers Local 252 v. Standard Sheet Metal*, 699 F.2d 481, 483–84 (9th Cir.1983). In that case, the parties were subject to interest arbitration under the terms of their expired contract. The parties deadlocked over inclusion of the same clause in their new agreement and the union removed the matter to the NJAB.

Its decision reimposed the standard contract, including the interest arbitration provision. We affirmed the NJAB award on the grounds that the employer's defenses were barred by its failure to move to vacate the award. *Id.* at 482, 484. We did not consider whether an interest arbitration clause could be imposed against an objecting party in an interest arbitration award. *Standard Sheet Metal* is distinguishable, therefore, and does not conflict with our holding here that an interest arbitration clause is unenforceable as it applies to the inclusion of a similar clause in a new collective bargaining agreement.

■■■ The Union also argues that AMP cannot now object to the interest arbitration clause because it did not appear before the NJAB and voice its objection there. The inclusion of an interest arbitration clause in a successor agreement requires the consent of both parties, however, not merely the absence of objection. *Williams*, 752 F.2d at 1479. The NJAB improperly imposed the interest arbitration clause in the new contract. Thus, its inclusion of the interest arbitration clause in its February 9, 1984 award is void and unenforceable.

## RULE 11 SANCTIONS

The Union argues that the district court's refusal to impose Fed.R.Civ.P. 11 sanctions on AMP was error as a matter of law. The district court found that the filing of the motion was ill-advised but declined to impose sanctions because it did not find that plaintiff's filing of the motion was "undertaken with the requisite bad faith or improper motive necessary to warrant sanctions."

This court recently interpreted the 1983 amendments to Rule 11. *Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir. 1986).[3] In *Zaldivar*, the court rejected the

---

**3.** Rule 11 provides in pertinent part that:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well

grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost

subjective good faith requirement of the pre–1983 rule and in its place adopted an objective good faith standard. An element of objective good faith is the reasonable inquiry requirement. The court stated that:

A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after "reasonable inquiry." Such inquiry is that amount of examination into the facts and legal research which is reasonable under the circumstances of the case. Of course, the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions.

*Id.* at 831.

We remand to the district court for redeterminations of the issue of Rule 11 sanctions in light of the standard announced in *Zaldivar*.

For the reasons previously stated the judgment of the district court confirming the interest arbitration component of the NJAB award is vacated; the judgment confirming the remainder of the NJAB award is affirmed; the determination of Rule 11 sanctions is remanded for further consideration.

VACATED IN PART, AFFIRMED IN PART, and REMANDED.

of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, ... an appropriate sanction....