**UNITED BROTHERHOOD OF CARPENTERS AND JOINTERS OF AMERICA, AFL–CIO Local 2247, and Trustees for the Alaska Carpenters Health and Security Fund, Retirement Fund, and Apprenticeship and Training Fund, Plaintiffs-Appellants,**

v.

**ENDICOTT ENTERPRISES, INC., Defendant-Appellee.**

**No. 85–3865.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 2, 1986.

Decided Dec. 19, 1986.

Randall Simpson, Jermain, Dunnagan & Owens, Anchorage, Alaska, for plaintiffs-appellants.

John F. Clough, III, Juneau, Alaska, for defendant-appellee.

Before SNEED, KENNEDY, and WIGGINS, Circuit Judges.

SNEED, Circuit Judge:

United Brotherhood of Carpenters and Jointers of America, AFL–CIO Local 2247 (Union) appeals from a summary judgment granted in favor of Endicott Enterprises, Inc. (Endicott). The district court found that Endicott had effectively repudiated a section 8(f) prehire agreement with the Union, and thus was not liable to the Union for benefits due under the prehire agreement. The Union also appeals an award of full attorneys' fees to Endicott. We hold that summary judgment was proper but the award of attorneys' fees was an abuse of discretion; therefore, we affirm in part and reverse in part.

## I.

### FACTS AND PROCEEDINGS BELOW

During late 1981 and early 1982, Endicott—a husband and wife corporation, with Warren and Marian Endicott each owning 50% of the stock—planned to construct a major addition to its ACE Hardware building in Juneau, Alaska. In April, 1982, Albert Stotz, a friend of the Endicotts, did some demolition and shelving work on the hardware store; he did not accept payment for this work. Mr. Endicott approached Stotz about working on the proposed construction project, and Stotz said that he would do the work only if the job were a union job.

Stotz contacted Waino Korpela, the business agent for the Union. In May, 1982, Warren Endicott met with Korpela. After discussing the payment of fringe benefits, Mr. Endicott indicated that he was willing to sign an agreement with the Union. On May 12, 1982, Marian Endicott signed a compliance agreement with the Union. Korpela gave Mr. Endicott a copy of the master labor agreement incorporated by the compliance agreement. At the time the

Endicotts entered into the compliance agreement, Stotz began working for them by doing construction work on their garage. He worked from May 12, 1982 to May 25, 1982, on which day he was injured. During this time, Endicott filed the appropriate reports with the Union and paid Stotz's benefits.

In August, 1982, workers began the demolition part of the addition project at the ACE Hardware store, which was located very close to Union headquarters. In October, 1982, carpentry work commenced on the addition. This work was performed entirely by non-union carpenters hired by Endicott from W.C. Construction Co. LeRoy Peck, who replaced Waino Korpela as the Union's business agent on July 1, 1982, testified that from the very beginning of the project he knew that carpentry work was being done on a non-union basis. Excerpt of Record (E.R.) at 264, 266–67. The crew worked from October, 1982 to December, 1982.

Endicott continued to file remittance reports with the Union during the period from August, 1982, to January 19, 1983. These reports first listed Stotz as the only union employee and shortly thereafter listed no union employees. Endicott never listed the non-union construction workers on the remittance forms. According to the Union's Trust Funds Division, there is a two-month lag between the time an employer files the remittance forms with the Trust Funds Division and the Union's receipt of those forms.

Peck contacted Warren Endicott in January, 1983 to find out whether Endicott "was going to go union on the job." Mr. Endicott responded that he was not sure. Two weeks later they met again and Endicott said that he was not going to use Union workers. In late January, 1983, the Union decided to picket Endicott, claiming a breach of the master labor agreement.

The Union sued under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for unpaid contributions for employees of Endicott and for the employees of the non-union construction company performing carpentry work on the ACE Hardware store.[1] After hearing cross-motions for summary judgment, the district court denied the Union's motion and granted Endicott's. The court declined to decide the issue of whether Endicott intended to sign a prehire agreement,[2] and refused to grant summary judgment on that issue because the facts were disputed. In granting summary judgment for Endicott the district court held that even if the contract between the parties were a prehire agreement, Endicott repudiated the agreement by conduct. E.R. at 471. The court also granted full attorneys' fees to Endicott. The Union appeals, and Endicott seeks attorneys' fees on appeal.

The Union attacks the jurisdiction of the district court on the grounds that the National Labor Relations Board (NLRB) must determine whether the Union lacked majority status before the district court can confront the repudiation issue. Next it asserts that, in any event, there was no repudiation of the prehire agreement, and, finally, that the award of attorneys' fees to Endicott was an abuse of the district court's discretion. We shall address each of these contentions separately.

## II.

### THE JURISDICTIONAL ISSUE

#### A. *Prehire Agreement*

Section 8(f) of the National Labor Relations Act, 73 Stat. 525, 545, 29 U.S.C.

---

1. W.C. Construction Co. performed the work as a subcontractor to Endicott pursuant to a written proposal at a fixed price. The master labor agreement between Endicott and the Union required that Endicott be responsible for paying all employee fringe benefit contributions of its subcontractors who had not signed a labor agreement. E.R. at 312.

2. If the parties did not intend to enter into a prehire agreement, then the Union would have no claim for payment of benefits. Because the district court found the question of whether there was a prehire agreement to be a disputed fact question and this issue has not been raised on appeal, we assume the existence of a valid prehire agreement and decide whether Endicott effectively repudiated this agreement.

§ 158(f), creates an exception in the construction industry to the general policy prohibiting binding collective bargaining agreements between employers and employee bargaining units that have not received majority support. Section 8(f) allows employers and unions in the construction industry to enter into "prehire" agreements that are generally signed before the hiring of employees and, therefore, before any showing of union majority support. *See Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 266, 103 S.Ct. 1753, 1756, 75 L.Ed.2d 830 (1983); *John S. Griffith Constr. Co. v. United Bhd. of Carpenters Local 563,* 785 F.2d 706, 707 (9th Cir.1986).

■ Prehire agreements enable employees in the construction business, in which employment is generally transitory, to obtain some of the benefits of union representation before the union obtains majority support. *See Todd v. Jim McNeff, Inc.,* 667 F.2d 800, 802 (9th Cir.1982), *aff'd,* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983). These agreements also assure the employer of a supply of skilled labor ready for quick referral, protection against labor unrest during the period of the contract, and predictable labor costs, an important tool in the bidding process. *Id.* A prehire agreement is voidable at either party's option until the union receives majority support of the workers at the employer's construction site, at which time it matures into a fully binding collective bargaining agreement. *See, e.g., Griffith Constr. Co.,* 785 F.2d at 709.

## B. *NLRB's Jurisdiction*

The primary issue in this case is whether Endicott effectively repudiated its prehire agreement with the Union. As a prerequisite to a resolution of this issue, however, it was necessary for the district court to find that the Union did not achieve majority status at the ACE Hardware construction site. The court so found and stated that "[n]o union employee ever worked on the hardware store job, although it may have been the Endicott's [sic] intent to hire Stotz for that job." E.R. at 471.

■ The Union challenges the power of the district court to make a finding on majority status by raising the issue of primary jurisdiction. The principle invoked is that "the NLRB has the initial responsibility of deciding issues involving [union] representation." *Griffith Constr. Co.,* 785 F.2d at 709. The Union thus asserts that the district court could not have decided the repudiation question without an NLRB determination that the Union lacked majority status.

We reject the Union's argument because the doctrine of primary jurisdiction does not apply in determining a union's *past* representational status. This court in *Todd v. Jim McNeff, Inc.,* 667 F.2d at 804, stated:

> The [NLRB] has expertise in determining the majority status of a union at any given time. It has no apparatus for determining a union's past status. If there has been a repudiation, the crucial question is whether the union had previously attained majority status. Recreation of past relationships for the purpose of resolving factual disputes is one of the traditional functions of a trial court, and not a process in which the NLRB has any extraordinary expertise. Therefore, in this opinion we do not extend the District Court's jurisdiction into an area in which the NLRB exercises exclusive authority.

Although we have previously referred to the above-quoted language as dicta, *see Griffith Constr. Co.,* 785 F.2d at 709 n. 2, we see no reason now to depart from it. This lawsuit arose after the completion of the hardware store job; therefore, only the past representational status of the Union was at issue. The district court had jurisdiction to address the majority status issue. In light of the fact that both parties agree that no union employee ever worked on the hardware store job, the district court's finding that the Union never achieved majority status was correct.

## III.

## THE REPUDIATION ISSUE

On the basis of this finding, the district court turned to the repudiation issue. It

entered a summary judgment for Endicott on the ground that its non-compliance with the terms of the prehire agreement was so bald and open as to put the Union on notice of its intent to repudiate.

## A. Standard of Review

The standard of review applicable to the grant of summary judgment has been stated many times. It is whether "there is any genuine issue as to any material fact and, if not, whether viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is entitled to prevail as a matter of law." *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 561 (9th Cir.1984). That is, we review the grant of summary judgment de novo. *American Metal Products, Inc. v. Sheet Metal Workers Int'l Ass'n Local 104*, 794 F.2d 1452, 1454 (9th Cir.1986).

## B. Repudiation by Conduct

Either party, to repeat, has the right to repudiate the agreement before the union obtains majority support in the relevant unit. *Jim McNeff, Inc. v. Todd*, 461 U.S. at 270, 103 S.Ct. at 1758. However, the United States Supreme Court has declined to decide what specific acts would constitute repudiation. *Id.* at 270–71 n. 11, 103 S.Ct. at 1759 n. 11. This circuit, while also refraining from delineating a test for repudiation by conduct,[3] has stated that "in some circumstances noncompliance can be so bald as to put the union on notice of the employer's intent to repudiate." *Todd v. Jim McNeff, Inc.*, 667 F.2d at 804.

The Eighth Circuit, after reviewing the previous cases addressing the issue of repudiation of prehire agreements by conduct, concluded that an employer may repudiate such an agreement by conduct. *Contractors Health & Welfare Plan v. Har-*

kins Constr. & Equipment Co., 733 F.2d 1321, 1326 (8th Cir.1984). The *Harkins* court stated:

In order to constitute a repudiation, the conduct must be sufficient to put the union and the employees on notice that the agreement is terminated [citation omitted]. Whether sufficient notice of termination has been given raises a question of fact that requires an examination of the conduct of all parties. [citation omitted]. Where the prehire contract itself, as in this case, contains no provision for a formal notice of termination, open and notorious acts by one party, known to the other, which are inconsistent with the continuance of the contract would, in our view, constitute sufficient notice of repudiation. A mere breach of contract ordinarily will not suffice to establish repudiation.

733 F.2d at 1326. *See also Washington Area Carpenters' Welfare Fund v. Overhead Door Co.*, 681 F.2d 1, 9 n. 38 (D.C.Cir. 1982) ("The essential point is that the union and employees be put on notice that the contract is voided."), *cert. denied*, 461 U.S. 926, 103 S.Ct. 2085, 77 L.Ed.2d 296 (1983).

▮ The Union argues that the district court erred in finding Endicott's actions sufficiently bald and open to give the Union notice of Endicott's intent to repudiate. We disagree. Other than Mr. Stotz, who never actually performed any work at the ACE Hardware construction site, no Union workers ever worked on the job. The Endicotts hired a non-union contractor and used non-union employees who were not paid union-scale wages and did not receive union benefits. Endicott did not comply with a single term of the prehire agreement at the ACE Hardware site at any time. This was not the case of an equivocal minor breach of a prehire agreement. Here Mr. Endicott's actions, which were affirmed by his

---

3. This court in *Operating Engineers Pension Trust v. Beck Engineering and Surveying Co.*, 746 F.2d 557, 566 (9th Cir.1984), held that "a construction industry employer who employs a single employee pursuant to a Section 8(f) prehire agreement is entitled to repudiate the agreement by conduct sufficient to put the un-

ion and the employee on notice that the agreement has been terminated." The court refused to adopt a general rule relating to the conduct required to manifest an intent to void a prehire agreement outside of the single employee context. *Id.* at 565.

words in January, 1983, were totally inconsistent with the existence of such an agreement.

Moreover, it is undisputed that the Union had actual notice of the open and notorious acts on the part of Endicott. The ACE Hardware job site was located only 100 to 150 yards away from the Union hall, so close "you could spit over there," according to Mr. Stotz. E.R. at 372. Mr. Peck, the business agent for the Union, observed the carpentry work and the absence of any Union employees at the construction site just by walking past the area. The fact that Endicott was performing the job on a non-union basis from the outset was the subject of discussion at Union meetings. Significantly, the Union itself did not comply with terms of the prehire agreement such as informing Endicott of the names of its stewards. In short, from the outset of the project neither party treated the prehire agreement as if it were still in effect. Under these circumstances we hold that a trier of fact could not reasonably find that there had been no repudiation. We therefore affirm the district court's order granting summary judgment in favor of Endicott.

## IV.

### THE ATTORNEYS' FEES ISSUE

■ The district court awarded full attorneys' fees to Endicott, finding that the Union's claim was "frivolous, unreasonable, and without foundation." E.R. at 518. It is within the discretion of the district court to award attorneys' fees to employers that successfully defend ERISA trust fund collection actions. *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1415 (9th Cir.1984). An award of fees will be reversed only for an abuse of discretion. *Id.*

This court has indicated the factors that a district court should consider when deciding whether to award attorneys' fees. These factors are:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.; Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980). The above listed factors frequently lead to the conclusion that attorneys' fees should not be charged against ERISA plaintiffs. *See Russell*, 726 F.2d at 1416. *See also Marquardt v. North Am. Car Corp.*, 652 F.2d 715 (7th Cir.1981) (explaining why application of the *Hummel* guidelines suggests that trustees of benefit plans are more likely than employers to recover attorneys' fees).

■ We believe, after considering the factors listed in *Hummel*, that the district court abused its discretion in awarding attorneys' fees to Endicott. After the United States Supreme Court decision in *Jim McNeff, Inc. v. Todd*, the issue of what acts constitute repudiation of a prehire agreement has been an open question. Although it is clear, in our opinion, that Endicott effectively repudiated its prehire agreement by its conduct, there is no evidence that the Union pursued its claim in bad faith. The Union owed a fiduciary duty to preserve benefits for all employees covered by the prehire agreement. Because this lawsuit involves a relatively unsettled area of the law, we cannot find that the Union's suit was the kind of vexatious litigation meant to be deterred by the imposition of attorneys' fees.

In its order awarding attorneys' fees, the district court stated that the facts of this case were nearly identical to those of *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501 (9th Cir.1984). However, that case turned on a lack of intent to contract. *Id.* at 1505. The district court here specifically refused to decide whether Endicott intended to sign a prehire agree-

ment. The reasoning in *Gilliam* is not controlling here. We find that the district court abused its discretion and reverse the award of attorneys' fees. For the same reasons as discussed above we also decline to award attorneys' fees to Endicott on appeal.

AFFIRMED IN PART, REVERSED IN PART.

Circuit Judge WIGGINS may file a separate statement at a later date.