**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TAYLOR SHEET METAL, INC., | No. 18-35176 |
| Plaintiff-Appellee, | D.C. No. 3:17-cv-00753-SB |
| v. | |
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS UNION, LOCAL NO. 16, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted May 14, 2019
Portland, Oregon

Before: N.R. SMITH, WATFORD, and R. NELSON, Circuit Judges.

The International Association of Sheet Metal, Air, Rail and Transportation

Workers Union, Local No. 16 ("Union") appeals the district court's order granting

summary judgment and vacating an arbitration award imposed by the National

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Joint Adjustment Board ("NJAB") against Taylor Sheet Metal, Inc. ("Taylor"). We have jurisdiction under 28 U.S.C. § 1291; we reverse and remand.

When the parties signed a "prehire" collective bargaining agreement ("CBA"), Taylor employed only one statutory employee. The CBA, modeled on a template known as the Standard Form of Union Agreement ("SFUA"), contained auto-renewal and interest arbitration provisions.[1] Ten months after the Union notified Taylor it was reopening the CBA, the Union declared an impasse and invoked the interest arbitration provision. Taylor then purported to repudiate the CBA and objected to the jurisdiction of the NJAB.

The NJAB ordered the parties to execute a new four-year agreement but removed the interest arbitration provision in Article X, Section 8. Taylor then asked the district court to vacate the arbitration award for lack of jurisdiction. The Union cross-petitioned to enforce the award. The district court vacated the arbitration award. We review its order de novo. *Teamsters Local Union 58 v. BOC Gases*, 249 F.3d 1089, 1093 (9th Cir. 2001); *Laborers Health & Welfare Tr. Fund for N. Cal. v. Westlake Dev.* ("*Westlake*"), 53 F.3d 979, 981 (9th Cir. 1995).

---

[1] "[A]n interest arbitration clause [is one that] requires the signatories to a CBA to submit disputes over new contract terms to arbitration." *Sheet Metal Workers Int'l Ass'n, Local 104 v. Simpson Sheet Metal, Inc.*, 954 F.2d 554, 555 n.1 (9th Cir. 1992).

2

1.    The district court erred by vacating the arbitration award.

a.    The district court erred by concluding Taylor could repudiate the CBA.  We have held that employers can repudiate Section 8(f) prehire agreements under the one employee doctrine.[2]  *See Westlake*, 53 F.3d at 983. However, *Westlake* did not disturb our prior holding that employers may not repudiate under the one employee doctrine where there is an interest arbitration provision.  *See Am. Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 104* ("*AMP*"), 794 F.2d 1452, 1455 (9th Cir. 1986).  Consequently, the CBA's auto-renewal and interest arbitration provisions "trump" the one employee doctrine.

Taylor seeks to distinguish *AMP*, arguing that case did not address the one employee doctrine.  We disagree.  In *AMP*, the employer "notified the Union that since AMP had no union employees and did not anticipate further hiring, AMP would terminate the collective bargaining agreement upon its expiration."  *Id.* at 1454.  "AMP argue[d] that its interest arbitration obligations are somehow linked

---

[2] The "one employee doctrine" is a statutory interpretation by the National Labor Relations Board ("NLRB") that an employer does not violate its statutory duty to bargain under the National Labor Relations Act ("NLRA") by unilaterally repudiating a collective bargaining agreement that covers a bargaining unit containing a single employee or no employees.  *Stack Elec., Inc.*, 290 N.L.R.B. 575 (1988).

to and canceled by its claim that it no longer has a statutory duty to bargain under the [NLRA]"—i.e., the NJAB was without jurisdiction, because AMP had terminated the CBA on the basis that it no longer had a statutory duty to bargain. *Id.* at 1455. We unequivocally rejected this argument, determining that "AMP's duty to bargain arose from its collective bargaining agreement and not from statutory obligations. . . . That the children of the employer were the only remaining members of the unit is simply not relevant." *Id.* (footnote omitted). Thus, *AMP* held that the statutory right to repudiate can be overcome by interest arbitration clauses. *Id.*

Taylor next argues that we cannot rely on *AMP*, because it predated the en banc decision in *Mesa Verde Construction Co. v. Northern California District Council of Laborers* ("*Mesa*"), 861 F.2d 1124 (9th Cir. 1988). We disagree.

After the *AMP* court determined that the lack of statutory employees was "simply not relevant" to AMP's contractual duty to bargain, the court proceeded to reject AMP's argument that it could repudiate the interest arbitration provisions on account of the CBA's status as a prehire agreement. 794 F.2d at 1455. At that time, an employer *could* repudiate a prehire agreement—they were considered "voidable by either party until the union establishe[d] that it represent[ed] a majority and an appropriate unit." *Id.* at 1456 (citing *Jim McNeff, Inc. v. Todd*, 461

4

U.S. 260, 269 (1983)). Thus, there may have been a question at the time *AMP* was decided about whether an interest arbitration provision would have "trumped" the right to repudiate a "voidable" prehire agreement. However, after *AMP*, an en banc panel decided *Mesa,* holding that employers generally could not repudiate Section 8(f) prehire agreements midterm. *Mesa*, 861 F.2d at 1137. In short, even if *AMP* had involved a Section 8(f) prehire agreement, *Mesa* would preclude midterm repudiation.

Citing *Westlake*, Taylor next argues that it could repudiate the entire agreement (including the interest arbitration provision) under the one employee doctrine. *Westlake* did hold that an employer could repudiate a Section 8(f) prehire agreement under the one employee doctrine. 53 F.3d at 982–83. However, *Westlake* did not disturb *AMP*'s holding that an interest arbitration provision still "trumps," because *Westlake* did not involve an interest arbitration provision. *See Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions."). *Westlake* was decided by a three-judge panel; it couldn't have overruled *AMP*. *See Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) ("[A] published decision of this court constitutes binding

authority which must be followed unless and until overruled by a body competent to do so." (quotation marks and citation omitted)).

We stress that Taylor's interpretation would allow an employer, who knowingly and voluntarily entered into a CBA containing an interest arbitration clause with no statutory employees, to raise that same lack of statutory employees to avoid his contractual obligation to arbitrate over a renewal agreement. The Supreme Court and the Ninth Circuit's en banc panel in *Mesa* cautioned about such an interpretation. *See Jim McNeff*, 461 U.S. at 271 ("[I]t strains both logic and equity to argue that a party to such an agreement can reap its benefits and then avoid paying the bargained for consideration. . . . Having had the music, he must pay the piper." (footnote omitted)); *Mesa*, 861 F.2d at 1131 (agreeing with the D.C. Circuit's statement that it could not "conceive of such an exercise in futility on the part of Congress as to validate a contract with a union having minority status, but to permit its abrogation because of the union's minority status." (quoting *Local No. 150, Int'l Union of Operating Eng'rs v. NLRB*, 480 F.2d 1186, 1190 (D.C. Cir. 1973)).

b. The district court erred when it concluded that repudiation was a question for the court and not the arbitrator. Generally, when a CBA contains a "customary" arbitration clause, acts of repudiation or termination must be

6

submitted to arbitration. *Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1338 (9th Cir. 1990) (quoting *Bhd. of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 511 n.4 (9th Cir. 1987)). "[The general] rule applies whether the dispute between the parties is solely over termination or repudiation, or whether, as here, their disagreement over that question is a *threshold issue that must be resolved before the underlying dispute can be reached.*" *Id.* (emphasis added).[3] In order to qualify for a "narrow" exception, "at least some of the alleged acts of repudiation [must] occur[] before February 20, 1987, when pre-*Deklewa* law applied." *Id.* at 1338–39. Here, the purported repudiation took place decades after 1987, so repudiation is a question for the arbitrator. *See id.* at 1337 n.2.

Taylor argues that we should affirm the district court's determination that a court must determine whether the CBA was repudiated. It relies on a pre-*Deklewa* case, *Ion Construction Co. v. District Council of Painters No. 16*, which held that courts (not arbitrators) must decide the effectiveness of repudiation of a prehire agreement. 803 F.2d 1050, 1051 (9th Cir. 1986) (per curiam). Taylor reads

---

[3] A "customary" arbitration clause broadly provides that any dispute arising out of the agreement must be arbitrated. *Id.*

*Camping* to confirm that *Ion Construction* remains good law, but limited to when repudiation occurs under the one employee doctrine.

However, no case applies the *Ion Construction* exception outside the pre-*Deklewa* Section 8(f) repudiation context. More importantly, *Camping* was clear: the *Ion Construction* exception only applies when "at least some of the alleged acts of repudiation occurred before February 20, 1987, when pre-*Deklewa* law applied." 915 F.2d at 1339. Taylor is simply advocating for a new exception to the "general rule" that, post-*Deklewa*, the Ninth Circuit enforces customary arbitration clauses.

Taylor also argues that a court needs to decide repudiation, because the "right" to repudiate under the one employee doctrine flows from a statute. However, a CBA can limit an employer's "right" to terminate or repudiate a prehire agreement. *See Sheet Metal Workers Int'l Ass'n, Local 206 v. R.K. Burner Sheet Metal Inc.*, 859 F.2d 758, 762 (9th Cir. 1988) ("Whether or not this court adopts the *Deklewa* standard, we agree with the district court that Burner was not entitled to repudiate unilaterally the 1983 Agreement as a matter of contract." (citation omitted)). An employer may have a "statutory right to walk away from the agreement upon its expiration, without submitting to arbitration[,]" but "[t]he contract is another matter." *Beach Air Conditioning & Heating, Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 102*, 55 F.3d 474, 477 (9th Cir. 1995); *see*

8

*also Sheet Metal Workers Int'l Ass'n, Local No. 162 v. Jason Mfg., Inc.*, 900 F.2d 1392, 1396 (9th Cir. 1990); *AMP*, 794 F.2d at 1455. Just as the auto-renewal and interest arbitration provisions may limit the post-*Deklewa* "right" to terminate at the end of the contract, *see Beach Air*, 55 F.3d at 477, those same renewal and interest arbitration provisions eliminate the "right" to repudiate here. Taylor's explicit waiver of "any right it may have to repudiate this Agreement during the term of this Agreement or during the term of any extension, modification or amendment to this Agreement" only bolsters our conclusion.

Taylor lastly argues that its statutory "right" to repudiate under the one employee doctrine cannot be waived, because it would be unfair to hold employers with no statutory employees "hostage," since the NLRB cannot decertify the union. Our cases preclude this argument. *See Simpson Sheet Metal*, 954 F.2d at 557; *Emp. Painters' Tr. v. J & B Finishes*, 77 F.3d 1188, 1192 (9th Cir. 1996) (per curiam) ("Parties to a collective bargaining agreement are conclusively presumed to have equal bargaining power, and union agents have no duty to explain to employers the terms, conditions, or consequences of a collective bargaining agreement.").

**REVERSED** and **REMANDED.**