**BEACH AIR CONDITIONING AND HEATING, INC., Plaintiff–Counter–Defendant–Appellee,**

v.

**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 102, Defendant–Counter–Claimant–Appellant.**

No. 93–55620.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 1994.

Decided May 23, 1995.

Ray Van der Nat, Los Angeles, CA, for defendant-appellant.

Eugene F. McMenamin, Atkinson, Andelson, Loya, Ruud & Romo, Cerritos, CA, for plaintiff-appellee.

Before: WIGGINS, KOZINSKI and THOMPSON, Circuit Judges.

### OPINION

KOZINSKI, Circuit Judge:

#### I

On July 7, 1989, Sheet Metal Workers Local 102 (the union) entered into a collective bargaining agreement with contractor Beach Air Conditioning and Heating (Beach).[1] The agreement became effective immediately and remained in force until June 30, 1991. After that date, the agreement was to continue in force from year to year unless one of the parties gave timely notice of reopening negotiations.

The union did just that on January 22, 1991. Beach responded on January 29, 1991, with a letter disclosing its intention to terminate the agreement. ER 75. On July 8, 1991, Beach sent another letter, saying it felt free to unilaterally modify the terms and conditions of employment. In May 1992, the union wisely abandoned hope of negotiating a renewal agreement and instead sought arbitration. The "interest arbitration" clause of the original agreement provides for binding arbitration before the National Joint Arbitration Board for the Sheet Metal Industry (NJAB) in the event negotiations over renewal of the agreement become deadlocked. Beach refused to submit to arbitration, claiming it had no further obligations of any kind under the original agreement, which it considered stone dead from the expiration date of June 30, 1991. On July 2, 1992, the NJAB directed the parties to sign a new collective bargaining agreement identical to one the union had negotiated with a multi-employer group. ER 13–14. Beach sued under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), seeking an order vacating that award, and the union counterclaimed to enforce it.

Article XIII of the original agreement provides that, while the parties are negotiating a new agreement or submitting their dispute to interest arbitration, the terms of the original agreement remain in effect. Beach did not feel constrained by this provision, believing that the parties were neither negotiating a renewal nor properly subject to arbitration. The union had a decidedly different view and filed a grievance against Beach for its failure to observe the terms of the agreement from June 30, 1991 (the expiration date of the original agreement) to July 2, 1992 (the conclusion of arbitration). The original agreement provides that disputes arising out of the interpretation or enforcement of the agreement are to be decided by the Local Joint Adjustment Board (LJAB), consisting

---

**1.** Prehire collective bargaining agreements are authorized by section 8(f) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(f).

of representatives of the union and a local employers' association. The LJAB considered the union's claim and awarded the union damages of $25,488. Beach also sued to vacate this LJAB "rights arbitration" award; the union counterclaimed for enforcement.

The district court entered summary judgment for Beach and vacated both awards. With respect to the interest arbitration award, the court reasoned that (1) negotiations for contract renewal never began; (2) without negotiations, there could be no "deadlocked" negotiations; and (3) the contractual prerequisite to arbitration therefore did not exist and the NJAB lacked jurisdiction. The rights arbitration award of damages, in turn, had been based on Beach's refusal to adhere to the original agreement during renewal negotiations and arbitration. The district court reasoned that, because there had been no renewal negotiations, and the NJAB lacked jurisdiction to arbitrate, Beach had had no obligation to follow the original agreement in the interim.

## II

■ Beach was bound to observe the terms of the original agreement during the arbitration period, and to abide by the new agreement imposed by the NJAB, only if the NJAB properly had jurisdiction over the dispute. The NJAB had jurisdiction only if the parties had agreed to arbitrate the issue in dispute, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (internal quotation marks omitted). Whether a dispute is subject to arbitration is an issue for the courts rather than the arbitrator to decide. *Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mechanical & Stainless Inc.*, 863 F.2d 647, 653 (9th Cir.1988). We therefore owe no deference to the board's conclusion that it had jurisdiction under the agreement, and we interpret the agreement de novo.

The duration of the parties' obligations is set out in Article XIII, Section 1, which reads as follows:

This Agreement and Addenda Numbers ONE through SIXTY–SEVEN attached hereto shall become effective on the 7th day of JULY, 1989, and remain in full force and effect until the 30th day of JUNE, 1991, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement ... shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X, Section 8 have been otherwise completed.

Article X, Section 8 (Section 8) sets out the parties' agreement to submit to "interest arbitration," pursuant to which the NJAB may go so far as to impose a new agreement:

any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

(a) Should the negotiations for a renewal of this Agreement become deadlocked in the opinion of the Union representative(s) or of the employer(s) representative, or both, notice to that effect shall be given to the National Joint Adjustment Board.

. . . .

... The unanimous decision of said Board shall be final and binding upon the parties....

■ [1] Beach claims its obligations ended with the expiration of the original agreement on June 30, 1991. But the mere expiration of an agreement doesn't terminate all obligations imposed by it, as interest arbitration clauses survive expiration of the agreement. *Sheet Metal Workers' Int'l Ass'n, Local 206 v. R.K. Burner Sheet Metal Inc.*, 859 F.2d 758, 762 (9th Cir.1988). It's clear, for example, that if renewal negotiations between Beach and the union had begun and become deadlocked, Beach would be obliged to submit to arbitration regardless of whether the agreement had expired. *Id.*

Beach figured the best way to avoid deadlocked negotiations was to avoid negotiations altogether, and so refused to negotiate. Beach argues, and the district court agreed, that Section 8 is inapplicable because it describes arbitration provisions applicable only to "any controversy or dispute arising out of the *failure* of the parties to negotiate a renewal of this Agreement" (emphasis added), and you can't fail if you don't try.

 This argument is plausible only if Beach was free to refuse to negotiate. Beach argues, quite correctly, that it had a statutory right to walk away from the agreement upon its expiration, without submitting to arbitration. Nothing in the National Labor Relations Act prohibits either party from repudiating a prehire agreement upon its expiration. *See Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers,* 861 F.2d 1124 (9th Cir.1988) (en banc) (Act prohibits the unilateral repudiation of prehire collective bargaining agreements *prior* to termination of contract). The contract is another matter. We have previously construed the terms of virtually identical contracts and "repeatedly held that article X, section 8 and article [XIII], section 1 read together 'represent the parties' agreement to negotiate a renewal agreement, and, if no agreement is forthcoming, to submit their dispute to the NJAB for interest arbitration.'" *Sheet Metal Workers Int'l Ass'n, Local No. 162 v. Jason Mfg., Inc.,* 900 F.2d 1392, 1396 (9th Cir.1990) (quoting *American Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 104,* 794 F.2d 1452, 1455 (9th Cir.1986)).

In *Jason Mfg.,* we said that the obligation to negotiate was so central to the agreement that it survived despite the addition of an explicit termination provision. Invoking that provision, the employer there had given notice of its intent to terminate the original agreement, specifically refused to negotiate a *renewal* contract, but offered to negotiate an entirely new agreement. Following Beach's

reasoning, it would have made no sense to say that renewal negotiations were deadlocked, because they didn't even exist. Yet *Jason Mfg.* held that the employer had an obligation to negotiate a renewal contract despite having given notice of termination pursuant to the explicit termination provision.[2] We refused to enforce the termination provision because to do so would "abrogate the obligation incurred in the main agreement to negotiate, and if negotiations failed, to arbitrate." *Id.* at 1397.

The two other circuits that have addressed this issue have also held that an employer cannot escape the interest arbitration clause by refusing to negotiate, because the contract imposes not only a duty to accept a settlement imposed by the arbitrators once negotiations fail, but also a duty to negotiate in the first place. *See Sheet Metal Workers Int'l Ass'n Local 110 Pension Trust Fund v. Dane Sheet Metal, Inc.,* 932 F.2d 578, 581–82 (6th Cir.1991); *Sheet Metal Workers Local Union No. 20 v. Baylor Heating and Air Conditioning, Inc.,* 877 F.2d 547 (7th Cir.1989). In *Baylor,* the employer apparently conceded that the clause compelled it to bargain, but objected to that compulsion on the ground that it violated public policy favoring voluntary bargaining and voluntary agreement. 877 F.2d at 551 n. 4. The court rejected that argument, because the duty to negotiate had been voluntarily accepted by the employer. *Id.* In *Dane,* the Sixth Circuit adopted the Seventh Circuit's reasoning, concluding that "Article X, § 8 does seem to embody a requirement that the parties engage in negotiations." 932 F.2d at 582.

Beach points to our decision in *Sheet Metal Workers Int'l Ass'n, Local Union No. 150 v. Air Systems Eng'g, Inc.,* 948 F.2d 1089 (9th Cir.1990), as support for its theory that there can't be a "failure" of negotiations without an attempt. We held in *Air Systems* that an employer was not bound by the interest arbitration clause because the negotiation of a

---

2. The termination clause in *Jason Mfg.* read as follows:

Employer hereby agrees to be bound by any and all changes made in the present Bargaining Agreement, and/or new or renewed Agreements between the Association and Local Un-

ion No. 162 unless said individual member gives ninety (90) days written notice to the Union of his desire to terminate this Agreement as specified in the paragraph below.
900 F.2d at 1394 n. 2.

renewal contract had never begun. While some of the language in *Air Systems* seems to support Beach's argument, the result in that case turned on the union's failure to give timely notice of its intent to reopen negotiations.[3] The pattern agreement clearly states that interest arbitration takes place only "[i]n the event . . . notice of reopening is served." In the absence of such notice, Air Systems had no obligation to submit to arbitration, and neither the NJAB nor the courts had jurisdiction over the dispute. *Id.* at 1092. Here, by contrast, the union did give timely notice, so the arbitration provision could be invoked. Neither the language of the agreement nor the *Air Systems* opinion supports Beach's position that, even where valid notice *has* been given, negotiations still aren't "validly begun" unless both parties sit down at the negotiating table.

The parties here foreclosed the option of terminating the agreement upon expiration. Significantly, had the parties omitted Section 8, the agreement *would* have included a termination clause. Without Section 8, Article XIII provides that the agreement "shall continue in force and effect until conferences relating [to renewal] have been terminated by either party by written notice." Under that configuration, once either party calls a halt to negotiations, the agreement ends. But Beach and the union removed that option by including Section 8. Article XIII continues:

> . . . provided, however, that, if this Agreement contains Article X, Section 8, it shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X, Section 8 have been otherwise completed.

Thus there are only two possibilities once the original agreement has expired: either the agreement will continue unaltered, or notice of reopening will be given and a renewal contract will be renegotiated or imposed. The alternative to completing the section 8 procedures is not termination, but the perpetuation of the agreement in its original form. If the NJAB's arbitration award were vacated because Section 8 was inapplicable, the original agreement would remain in force.[4]

### III

Beach argues that reading the agreement to include a duty to negotiate a renewal contravenes the parties' intent because no employer would enter into a self-perpetuating relationship with no avenue of escape. But the self-perpetuation is limited; nothing says a renewed agreement must itself contain a renewal clause. The employer can bargain for a renewal contract for a fixed period or one containing a termination option. If the union refuses these terms and negotiations reach a deadlock, no agreement imposed by an arbitrator can contain an interest arbitration clause. *American Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 104,* 794 F.2d 1452, 1457 (9th Cir.1986). Thus, under the original agreement Beach was obligated at most to negotiate or accept the imposition of one more contract for a limited number of years.

Even that isn't inevitable. An employer can get out of the agreement by petitioning for an election to decertify the union. *See Jason Mfg.,* 900 F.2d at 1400 (employees dissatisfied with the agreement can challenge

---

**3.** The *Air Systems* court wrote that "[a]ny failure to negotiate a renewal of the contract would necessarily occur after negotiations to renew had begun. Thus, in order for [the] arbitration provisions to apply, the parties must be involved in negotiating a renewal of the agreement. . . . Thus, the interest arbitration clause cannot become effective until the parties have validly begun negotiations for a renewal of the contract. . . ." 948 F.2d at 1092. But the dispositive factor was the agreement's clear requirement that negotiations or arbitration take place only after one party has given timely notice to reopen.

**4.** Presumably the same thing was true in *Air Systems.* The article setting forth the duration of the agreement (there it was Article XII) said it would "continue in force from year to year . . . unless written notice of reopening is given not less than ninety (90) days prior to the expiration date." 948 F.2d at 1090. Since the notice was not given in time, the *original* agreement should have continued in force. However, the *Air Systems* court didn't address this issue. It merely vacated the arbitration award because, without notice of reopening, the interest arbitration clause hadn't been invoked, so the NJAB did not have jurisdiction.

the union's representative status by petitioning for a Board-conducted election). In fact, Beach succeeded in doing exactly that. On March 27, 1992, Beach petitioned the NLRB to conduct an election among Beach's employees. On September 8, 1992, the NLRB certified that a majority of Beach's employees had voted not to be represented by the union.[5] Any obligations Beach had to the union ended, therefore, on September 8th. *See id.* at 1399–1400 (new contract imposed by NJAB unenforceable subsequent to union decertification).

## Conclusion

■ Beach's refusal to negotiate created a deadlock and the union properly invoked Section 8. The NJAB therefore had jurisdiction and the authority to impose a new agreement. In the meantime, Beach was bound to observe the original agreement from June 30, 1991, to the conclusion of arbitration on July 2, 1992. When it failed to do so, the LJAB properly awarded damages to the union. Beach challenged only the jurisdiction of the arbitrators, not the substance of the two arbitration awards. There is thus no need to remand. Because Beach was subject to the jurisdiction of the arbitration boards, we enforce both awards.[6]

**REVERSED.**

---

5. Presumably the election was also unanimous, as Beach's workforce consisted of a whopping two employees.

6. Because the union has been decertified, Beach was bound to observe the new agreement only from July 2nd until union decertification on September 8, 1992. The LJAB awarded damages only for Beach's failure to observe the *original agreement* until the NJAB imposed a new agreement, but didn't address Beach's failure to observe the new agreement. Thus, the question of damages for Beach's failure to observe the new agreement until September 8th is not before us.