**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION,
LOCAL UNION NO. 2,

        Plaintiff - Appellee,

      v.

McELROY'S, INC.,

        Defendant - Appellant.

No. 06-3189

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. Ct. No. 05-CV-4086-RDR)**

---

Stewart L. Entz, Entz & Entz, P.A., Topeka, Kansas, appearing for Defendant-Appellant.

Michael T. Anderson, Davis, Cowell & Bowe, L.L.P., San Francisco, California (John P. Hurley, Jolley, Walsh, Hurley, Raisher & Aubry, P.C., Kansas City, Missouri, with him on the brief), appearing for Plaintiff-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

      Defendant-Appellant McElroy's, Inc. ("McElroy's"), a mechanical contractor, and

Sheet Metal Workers' International Association, Local Union No. 77 (now merged with

Plaintiff-Appellee Local Union No. 2, hereinafter "Union") entered into a pre-hire agreement authorized by § 8(f) of the National Labor Relations Act ("NLRA"). *See* 29 U.S.C. § 158(a). McElroy's and the Union performed under the contract for nearly three years when McElroy's notified the Union that it intended to terminate the agreement on its expiration date. The Union insisted that under the terms of the agreement—specifically the "interest arbitration" clause—McElroy's was obligated to negotiate for renewal of the contract. After McElroy's refused to negotiate, the Union submitted the dispute to arbitration before the National Joint Adjustment Board ("NJAB"), a private alternative dispute resolution body. The NJAB held a hearing on the matter and then directed the parties to execute a three-year renewal agreement with specified terms. McElroy's refused to comply and the Union filed an action in federal district court to enforce the NJAB's decision. *See* 29 U.S.C. § 185(a). The District Court determined that the agreement required interest arbitration[1] and enforced the NJAB's decision imposing a renewal agreement. McElroy's appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM the District Court's order.

## I. Background

The pre-hire agreement includes an expiration date of May 31, 2005. The agreement is based on the standard Sheet Metal Workers pre-hire agreement and includes

---

[1]Interest arbitration is the arbitration of new contract terms. *See Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machs., Local Union No. 550*, 167 F.3d 764, 768 n.2 (2d Cir. 1999).

an "extension clause" and an "interest arbitration clause." The extension clause, Article XIII, Section 1(A), provides that the agreement "shall continue in force from year to year" after the expiration date "unless written notice of reopening is given [to the other party] not less than ninety (90) days prior to the expiration date." If such notice is given, the agreement continues in force and effect "until conferences relating thereto have been terminated by either party, provided, however, that the contract expiration date . . . shall not be effective in the event proceedings under Article X[,] Section 8 are not completed prior to that date." Article X, Section 8 is the interest arbitration clause, which provides that "any controversy or dispute arising out of failure of the parties to negotiate a renewal of this agreement shall be settled" pursuant to the procedure set forth in that section. Relevant to this appeal, if "negotiations for renewal of this Agreement become deadlocked . . . either party may submit the dispute to the [NJAB]" for arbitration.[2] The unanimous decision of the NJAB is final and binding upon the parties.

---

[2]Article X, Section 8(a) provides an extensive procedure pursuant to which the parties are to resolve their disputes. Generally, if renewal negotiations become deadlocked, notice to that effect must first be given to the Sheet Metal International Association and the Sheet Metal & Air Conditioning Contractors National Association to determine whether renewal of negotiations is possible, prior to submission of the dispute to the NJAB. McElroy's argued before the District Court that the NJAB did not have jurisdiction to arbitrate because the Union allegedly did not follow the proper procedure. The District Court rejected this argument on the basis that it was a procedural question on which the court would defer to the arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("'[P]rocedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." (quotation omitted)). McElroy's does not raise this argument again on appeal, and so we will not address it.

On February 25, 2005, McElroy's faxed a letter to the Union giving notice of its intent to terminate the agreement on the expiration date, May 31, 2005. The same day, in response to this notice, the Union mailed a letter to McElroy's seeking to reopen negotiations in accordance with Article XIII. McElroy's did not respond. The Union made several additional written requests to McElroy's to negotiate a renewal agreement, but McElroy's either ignored or denied all of these requests. As a result, on May 26, 2005, five days prior to the agreement's expiration date, the Union submitted the dispute to the NJAB.

The NJAB scheduled a hearing for June 27, which McElroy's elected not to attend. Instead, McElroy's submitted a letter and memorandum to the NJAB setting forth its view that it had no obligation to bargain with the Union. On June 28, the NJAB issued an order directing McElroy's and the Union to execute a new three-year pre-hire agreement with terms as set forth in the NJAB's order.

On July 28, 2005, after McElroy's refused to execute a renewal contract, the Union filed suit in federal district court to enforce the NJAB's order. The District Court (1) rejected McElroy's argument that either party unilaterally could terminate the agreement on its expiration date; (2) held that the interest arbitration provision of Article X applies to this case because there was a "controversy or dispute arising out of failure of the parties to negotiate a renewal of the agreement"; (3) honored the finding of the NJAB that the procedural requirements for arbitration through the NJAB had been met; and (4) enforced the NJAB's order to execute a renewal agreement but removed from the

renewal agreement the interest arbitration clause under Article X, Section 8. McElroy's appeals.

## II. Discussion

McElroy's argues, first, that it had an absolute right to terminate the agreement upon the contractual expiration date without any obligation to negotiate for a renewal agreement, and second, that it was under no obligation to arbitrate the dispute under the interest arbitration clause because there was no "negotiation" for renewal of the contract resulting in a "deadlock" that could trigger Article X, Section 8 procedures. The ultimate question thus posed is whether the agreement bound McElroy's to engage in interest arbitration. *See AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (quotation omitted)). Whether the parties have submitted a particular dispute to arbitration—that is, the "question of arbitrability"—is for the court to decide. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[T]he question of arbitrability[] is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." (quotations, alteration, and emphasis omitted)).

McElroy's claims the national labor policy, as set forth in the NLRA, 29 U.S.C. § 151 et seq., and decisions of the National Labor Relations Board ("NLRB"), permit a party to a pre-hire agreement unilaterally to terminate an agreement on its expiration date without any obligation to negotiate a renewal agreement. While we agree that McElroy's

--5--

is under no statutory obligation to negotiate a renewal contract, we conclude that the terms of the pre-hire agreement—specifically the extension and interest arbitration clauses—create a contractual obligation to do so when one party timely gives notice of reopening. Nothing in the NLRA, the NLRB's decisions, or this Court's precedent releases McElroy's from this bargained-for contractual obligation.

Section 8(f) of the NLRA, 29 U.S.C. § 158(f), allows employers engaged primarily in the building and construction industry to enter into pre-hire agreements. In a pre-hire agreement, the employer agrees to hire union members or union referrals for the purpose of working on anticipated jobs during the contract period. *See Am. Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 104*, 794 F.2d 1452, 1455–56 (9th Cir. 1986). A union and an employer typically sign a pre-hire agreement before the employer hires any employees and, therefore, in advance of any showing of union majority support. *See id.* at 1455. Section 8(f) thus creates an exception to the NLRA's general rule prohibiting a union and an employer from signing a collective bargaining agreement recognizing the union as the exclusive bargaining representative before a majority of employees have authorized the union to represent their interests. *See id.* at 1456 (explaining that under § 7 of the NLRA, before a union signs a collective bargaining agreement with an employer, the union must establish majority status in the manner provided for in § 9); *see also NLRB v. Triple C Maint., Inc.*, 219 F.3d 1147, 1152 (10th Cir. 2000) (explaining the distinction between bargaining relationships under § 8(f), permitting pre-hire agreements, and § 9(a), providing that a union becomes the

--6--

exclusive representative for collective bargaining purposes when a majority of employees in a unit appropriate for collective bargaining designates the union to represent it).

Prior to the NLRB's decision in *John Deklewa & Sons, Inc.*, 282 N.L.R.B. 1375, 1987 WL 90249 (1987), *enforced sub nom*. *Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. NLRB*, 843 F.2d 770 (3d Cir. 1988), a § 8(f) agreement could be repudiated by either party at any time for any reason. *Triple C Maint.*, 219 F.3d at 1152 n.1. In *Deklewa*, however, the NLRB explicitly overruled its prior interpretation of § 8(f) and held that § 8(f) agreements are not unilaterally voidable prior to their expiration date. This Court upheld this interpretation of § 8(f) in *NLRB v. Viola Indus.- Elevator Div., Inc.*, 979 F.2d 1384, 1394 (10th Cir. 1992) (en banc). Thus, while unilateral termination of a pre-hire collective bargaining agreement prior to expiration is prohibited, nothing in the NLRA prohibits either party from repudiating a pre-hire obligation upon its expiration. Whether the contract itself permits repudiation, however, is another matter.

McElroy's interprets the pre-hire agreement to create two options upon expiration: unilateral termination under the rule in *Deklewa* or negotiation for renewal. A plain reading of the terms of the agreement indicates that McElroy's interpretation is incorrect. As explained, the agreement includes an extension clause and an interest arbitration clause. Article XIII, Section 1(A) provides that the agreement remains in effect until May 31, 2005 "and *shall continue* in force *from year to year* thereafter *unless* written notice of reopening is given not less than ninety (90) days prior to the expiration date."

(emphasis added). If notice of reopening is served, the agreement continues in effect "until conferences relating thereto have been terminated by either party, *provided, however*, that the contract expiration date . . . *shall not be effective* in the event that proceedings under Article X Section 8 are not completed prior to that date." Article X, Section 8, the interest arbitration clause, provides that "any controversy or dispute arising out of *failure* of the parties *to negotiate a renewal* of this agreement *shall* be settled" as provided in that section. (emphasis added). Under Section 8, if renewal negotiations become "deadlocked" then the parties begin a procedure to resolve the dispute, at the end of which, if the dispute remains unresolved, either party "may submit the dispute to the [NJAB]." The unanimous decision of the NJAB is "final and binding upon the parties."

Read together, these articles provide two options upon the expiration of the agreement: automatic renewal on a yearly basis, or, if notice is given ninety days prior to the expiration date, negotiation of a renewal agreement. If one party provides the requisite ninety days' notice of a desire to reopen negotiations, the other party has an obligation to negotiate. In negotiations, of course, the parties may mutually agree not to enter into another agreement at all, they may enter into an agreement with different terms, or they may enter into an identical agreement. If, however, the parties "fail[] . . . to negotiate a renewal of [the] agreement" after one party timely seeks renewal, and negotiations thereby have become "deadlocked," either party may submit the dispute to the NJAB for arbitration. While the dispute is pending resolution before the NJAB, Article XIII prevents the original agreement from expiring. The NJAB has the authority

--8--

to issue a decision that is final and binding on the parties. In short, these provisions create a duty on behalf of each party to negotiate and, in the absence of agreement, obligates them to accept the decision of the NJAB. One party's notice of intent to "terminate" the agreement on expiration does not affect the parties' contractual obligations thereunder.

Our conclusion is buttressed by the fact that other circuits interpreting language materially indistinguishable from that in the present agreement have reached the same conclusion. *See Sheet Metal Workers Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 428–29 (6th Cir. 2001) (holding that because union timely notified employer of desire to negotiate terms of new agreement, contractual duty bound employer by operation of interest arbitration clause to negotiate renewal terms in good faith); *Beach Air Conditioning & Heating, Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 102*, 55 F.3d 474, 478 (9th Cir. 1995) (concluding that "there are only two possibilities once the original agreement has expired: either the agreement will continue unaltered, or notice of reopening will be given and a renewal contract will be renegotiated or imposed"); *Sheet Metal Workers Local Union No. 20 v. Baylor Heating & Air Conditioning, Inc.*, 877 F.2d 547, 551 (7th Cir. 1989) (holding interest arbitration clause imposed both a duty to negotiate a renewal contract and a duty to accept settlement imposed by arbitrators if negotiations failed, and that enforcement of the interest arbitration clause does not violate public policy as established by *Deklewa*), *abrogated on other grounds by Int'l Union of Operating Eng'rs, Local 150 v. Rabine*,

161 F.3d 427 (7th Cir. 1998); *see also Int'l Brotherhood of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1090 n.5 (8th Cir. 2004) ("Interest arbitration is one type of contractual limitation upon a party's ability to unilaterally terminate a section 8(f) agreement.").

Nevertheless, McElroy's argues that the interest arbitration clause—providing for arbitration when "negotiations for renewal . . . become deadlocked"—does not apply on these facts because it never entered into negotiations with the Union to renew the agreement and thus there was no "deadlock" per se. In other words, McElroy's persists, absent *active* negotiation, the *Dekewla* rule allows a party unilaterally to terminate the agreement on its expiration date. This argument is valid only if the parties have no obligation to negotiate a renewal agreement in the first place. As we held above, the agreement obligates the parties to negotiate a renewal agreement or to have one imposed upon them if one party timely gives notice of a desire to renew the agreement. A party cannot avoid this obligation by refusing to engage in negotiations. *See Beach Air Conditioning*, 55 F.3d at 477 (rejecting the argument that "you can't fail [to negotiate a renewal contract] if you don't try" because it ignores the party's "duty to negotiate in the first place").[3]

---

[3]McElroy's argues that this Court should follow the approach taken by the Ninth Circuit in *Sheet Metal Workers International Ass'n, Local Union No. 150 v. Air Systems Engineering, Inc.*, 948 F.2d 1089, 1092–93 (9th Cir. 1991), in which the court held that an employer was not bound to arbitrate a renewal agreement because negotiation of a renewal contract had never begun. But the result in that case turned on the union's failure to give timely notice of its intent to reopen negotiations. *See id.* at 1092. The agreement

–10--

Here, the District Court was correct to enforce the NJAB's order directing the parties to enter into a renewal agreement. The Union served McElroy's with notice of reopening more than ninety days prior to expiration of the agreement; negotiations became "deadlocked" when McElroy's refused to negotiate; and the Union submitted the case to arbitration pursuant to Article X, Section 8 prior to expiration of the agreement.

### III. Conclusion

For the foregoing reasons we AFFIRM the order of the District Court.

---

clearly stated, as it does here, that interest arbitration takes place only in the event that notice of reopening is served ninety days prior to expiration of the original agreement. *Id.* In the absence of such notice, the employer has no obligation to negotiate for a renewal of the agreement and thus no obligation to submit the dispute to arbitration. *Id.* Unlike the situation in *Air Systems*, here, the Union timely provided notice of its desire to reopen negotiations and thus the interest arbitration provision could be invoked. The Ninth Circuit drew the same distinction in *Beach Air Conditioning*, 55 F.3d at 477–78.